Nathaniel Lipton (and David S. Barnet, Sidney Lansky, George Jacobs, Malcolm Jones, Harvey Mickelson, as Trustees f/b/o Creditors of said Nathaniel Lipton) v. Commissioner.
Lipton v. Commissioner
Docket No. 1821-71.
United States Tax Court
T.C. Memo 1974-317; 1974 Tax Ct. Memo LEXIS 3; 33 T.C.M. (CCH) 1457; T.C.M. (RIA) 740317; December 24, 1974. Filed *3 When this case was called for trial petitioner failed to appear. Respondent's motion to dismiss for failure to prosecute is granted. Respondent proved fraud by clear and convincing evidence. Decision will be entered for respondent in the amount of the deficiencies in tax and additions to tax under sec. 6653(b) determined by respondent in the notice of deficiency for each of the years 1963-6, and 1968. Respondent did not prove an underpayment of tax for 1967 so there can be no addition to tax for that year. Willard J. Frank, 888 Purchase St., New Bedford, Mass., for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion Drennen, Judge: Respondent determined deficiencies in petitioner's income taxes and additions to tax for fraud under section 6653 (b), I. R. C. 1954, for the taxable years and in the amounts following: Year
Deficiency
Addition to tax sec. 6653(b)
1963
$127,547.77
$63,903.49 1964
54,159.53
27,209.37 1965
94,296.40
47,277.80 1966
34,034.90
17,220.40 1967
-0-
211.20 [1]
1968
59,525.50
30,012.35
*4 When this case was called for trial in Boston on September 30, 1974, counsel for petitioner filed a motion to withdraw. For reasons appearing in the record this motion was granted. Petitioner did not appear. Respondent moved for judgment for failure to properly prosecute in the amount of the deficiencies in tax determined in the notice of deficiency, which motion the Court took under advisement and set the case for hearing on the fraud issue. The case was called for trial on the fraud issue on October 1, 1974, and no one appeared for petitioner. Respondent introduced evidence to prove fraud. For reasons mentioned herein respondent's motion for judgment with respect to the underlying deficiencies in income tax for the years 1963, 1964, 1965, 1966, and 1968 is granted and decision will be entered in the amount of those deficiencies determined in the notice of deficiency. The only issue remaining for decision is whether any part of the underpayment of tax was due to fraud and whether the delinquent returns filed by petitioner for each of the years 1963 through 1968 were false or fraudulent with intent to evade tax. Petitioner, Nathaniel Lipton, was a resident of New Bedford, *5 Mass., during the years 1963-8 and filed delinquent income tax returns for each of those years with the district director of internal revenue, Boston, Mass.
Petitioner was a certified public accountant practicing his profession in New Bedford during and prior to the years here involved. He was a well known accountant in the area with a successful practice, which included tax accounting, and he received taxable income from his business during each of the years 1963-8. Petitioner filed income tax returns for years prior to 1963 but did not file returns for the years 1963-8 until he was interviewed by an internal revenue agent in August of 1969, as hereinafter mentioned. Commencing sometime prior to 1960 petitioner became engaged in a "kiting" operation from which he derived the unreported income giving rise to the deficiencies in tax here involved. He approached various clients and acquaintances and told them he was factoring money. If the person approached was willing to invest funds in this venture petitioner proposed to factor those funds at 18 percent interest per annum, from which he would pay the investor 12 percent per annum, or 1 percent per month, on his investment *6 and keep the remaining 6 percent for himself. Petitioner apparently received over $1 million from "investors" under this scheme during the years 1963-8. Instead of factoring the money he received in this manner, petitioner began using the money for his own purposes and to pay the interest due on the "investment." By 1963 the interest due on these funds was so great that petitioner had to continue obtaining funds under the scheme in order to pay the interest due on prior "investments." He also decided that if he claimed these large interest payments as deductions on his income tax returns the revenue service would become curious and would uncover and disclose what he was doing, so he did not file income tax returns for the years 1963-8 when they were due. In 1969 the revenue service assigned a special agent to investigate why petitioner had failed to file returns for those years. The agent interviewed petitioner in petitioner's office in New Bedford on June 5, 1969. Petitioner told the agent he was expecting him since he had recently been interrogated by the State of Massachusetts taxing authorities. He also told the agent about his "kiting" operation and that he had not filed *7 returns for the years 1963-8 for fear of having it disclosed. Petitioner's case was reassigned to another special agent of the internal revenue service who again interviewed petitioner on August 13, 1969.During the course of this interview in which petitioner stated he wanted to tell the truth and cooperate fully to try to rectify the situation he had created, petitioner took previously prepared income tax returns for each of the years 1963-8 out of his desk drawer, signed them, and handed them to the agent. He told the agent about the scheme and that he had started using the money he received first to pay off a mortgage on his home and then to maintain an increasingly higher standard of living, and also to meet the interest payments when they became due. The agent did not discuss petitioner's returns with petitioner at the time but asked petitioner for information concerning his finances, including his books and records. Petitioner promised to furnish the information within 2 weeks but did not do so. Instead he called a meeting of all his creditors and disclosed to them his situation. Certain of petitioner's creditors formed a trust to take possession of petitioner's assets *8 and to litigate the liabilities. As a result petitioner was indicted on 53 counts for grand larceny committed during the years 1964-9 and eventually pleaded guilty to all 53 counts. The form of the counts charged petitioner with stealing money of the value of more than $100 from 53 different individuals and firms most of whose names were listed on petitioner's delinquent returns as persons to whom he had paid interest in the years here involved. On the delinquent returns petitioner gave the agent, he reported income from his accounting practice and interest income in rather large amounts for each of the years 1963-1968, and income from dividends, sales of property, and other sources in most of those years; however, no income was reported as having been received from the factoring operation on any of the returns. On each of the returns petitioner claimed deductions for interest paid to individuals and firms listed on a schedule attached to the returns the totals of which far exceeded the income reported on each return, and no taxable income was shown to be due. The amounts of the interest deductions claimed on the returns were as follows: Year
Interest deduction
1963
$68,567.00 1964
86,504.17 1965
115,437.50 1966
135,027.95 1967
145,089.84 1968
172,330.93
*9 When petitioner failed to provide respondent's agent with books and records and further information about his financial affairs, the agent contacted various creditors listed on petitioner's delinquent income tax returns to verify petitioner's story. He thereafter computed the unreported income received by petitioner from this source in the following manner. He determined the additional amount of interest petitioner had claimed as a deduction on each year's return over the amount of interest he had claimed as a deduction on his return for the prior year.He capitalized these additional amounts at 12 percent, the rate of interest petitioner had agreed to pay, to obtain the amount of additional funds petitioner received from his factoring scheme each year. He subtracted from these amounts the net losses (after interest deductions) petitioner had reported on his delinquent returns for each year and determined that the balance was unreported taxable income. [2]
Ultimate Findings of Fact *10 Petitioner appropriated to his own use in each of the years 1963-8 funds which he received from others by misrepresentation and false pretenses, which he did not report on income tax returns filed for those years. At least a part of the underpayment of tax resulting from such omission for each of the years, 1963-6, and 1968, was due to fraud. The delinquent income tax returns filed by petitioner for each of the years 1963-8 were false or fraudulent with intent to evade tax. Petitioner has the burden of proving that the underlying deficiencies in tax determined by respondent were erroneous. Louis Halle [Dec. 15,243], 7 T. C. 245, affd. [49-1 USTC 9295 ] 175 F. 2d 500 (C. A. 2, 1949), certiorari denied 338 U. S. 949. Petitioner failed to appear when the case was called for trial and had indicated through correspondence with his former counsel that he did not intend to contest the matter. The presumption of correctness supporting respondent's determination remains unattacked. Welch v. Helvering [3 USTC 1164 ], 290 U. S. 111. For complete failure of proof by petitioner, respondent's motion for judgment *11 with respect to the deficiencies in tax determined by respondent must be granted. Zelma Curet Miller, 51 T. C. 915. The burden of proof as to fraud is on respondent and he must prove by clear and convincing evidence intentional wrongdoing on the part of petitioner with intent to evade tax. M. Rea Gano [Dec. 5962], 19 B. T. A. 518; Estate of W. Marion Hendry [Dec. 32,861], 63 T. C. - (Dec. 4, 1974), Rule 142 of the Rules of Practice and Procedure of this Court.We find that respondent has carried his burden of proving fraud by clear and convincing evidence. We have found that petitioner received large sums of money in each of the years here involved under false representations and appropriated them to his own use. These moneys constituted taxable income to petitioner. Rutkin v. United States [52 USTC 9260 ], 343 U. S. 130; United States v. Rochelle [67-2 USTC 9694 ], 384 F. 2d 748 (C. A. 5, 1967); Rozelle McSpadden [Dec. 28,998], 50 T. C. 478; Gaylord C. Peters [Dec. 29,220], 51 T. C. 226. Petitioner was an educated man and knowledgable in accounting and tax matters, yet he failed *12 to report these receipts as income on the delinquent returns he filed for each of the years at issue. In fact he failed to file returns at all for those years until respondent started the investigation that led to this case. Even though petitioner's failure to file returns was in part due to his fear of revealing his "kiting" scheme it is clear that he must have known that he was also evading payment of tax on this income. And his failure to report these receipts on the delinquent returns appears to have been a deliberate attempt to conceal taxable income and underpay the tax due thereon. We have no explanation from petitioner as to why he failed to report these receipts. In the absence of any reasonable explanation, repeated gross understatements of income over a period of successive years constitutes convincing evidence of fraud with intent to evade tax. Rogers v. Commissioner [40-1 USTC 9459 ], 111 F. 2d 987 (C. A. 6, 1940), affirming [Dec. 10,077] 38 B. T. A. 16; Arlette Coat Co. [Dec. 17,629]. 14 T. C. 751. Furthermore, petitioner's failure to present adequate books and records to respondent's agent during the course *13 of his investigation is also an indicium of fraud. Leon Papineau [Dec. 22,333], 28 T. C. 54. We have found as an ultimate fact that the delinquent returns filed by petitioner for each of the years 1963-8 were false or fraudulent with intent to evade tax. We have also found as an ultimate fact that at least a part of the underpayment of tax for the years 1963-6, and 1968 was due to fraud, and the additions to tax determined by respondent for each of those years must be sustained. Sec. 6653(b), I. R. C. 1954. Respondent did not prove an underpayment of tax for the year 1967 so there can be no addition to tax under section 6653(b) for that year. Decision will be entered for the respondent for the years 1963, 1964, 1965, 1966, and 1968. Decision will be entered for the petitioner for the year 1967. Footnotes
1. Respondent did not determine a deficiency in income tax for 1967. The addition to tax is based on the self-employment tax correctly reported on the delinquent return and assessed.↩
2. The net loss reported by petitioner on his 1967 return exceeded the unreported income determined for that year so there was no deficiency in net taxable income determined for that year.↩