T.C. Summary Opinion 2009-186


UNITED STATES TAX COURT


JOHN Y. DING AND LINDA H. ZHANG, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 18253-07S.               Filed December 7, 2009.


John Y. Ding and Linda H. Zhang, pro sese.

Paul V. Colleran, for respondent.


        GOLDBERG, Special Trial Judge:  This case was heard pursuant
to the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  Pursuant to section
7463(b), the decision to be entered is not reviewable by any
other court, and this opinion shall not be treated as precedent
for any other case.  Unless otherwise indicated, subsequent
section references are to the Internal Revenue Code (Code) in

effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioners are husband and wife.

The sole issue for decision is whether petitioners are entitled to deduct $28,307 in expenses that John Y. Ding (petitioner) claimed on Schedule C, Profit or Loss From Business, for 2004.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in Massachusetts when they filed their petition.

Petitioners earned combined compensation of $280,436 from their employers in 2004. Ms. Zhang earned $167,703 from BlackRock, Inc., a large global investment management firm with offices in the United States, Europe, and Asia.

Petitioner earned $112,733 in 2004 from Leggett & Platt, Inc. (Leggett & Platt), headquartered in Missouri. Leggett & Platt manufactures a variety of engineered products, including metal products for use in furniture, such as inner springs for mattresses and recliner mechanisms for recliner chairs. Petitioner has a Ph.D. in economics, and at some time before 1998 he was a college professor and a consultant for local businesses, one of which was acquired by Leggett & Platt. In 1998 Leggett &

Platt hired petitioner full time to establish and manage the corporation's Asian operations.

As a result, petitioner now oversees the day-to-day operating decisions and technical customer service issues for Leggett & Platt's factories in Asia. He is also responsible for the corporation's Asian planning and budgeting work. A separate sales team is responsible for bringing in new customers and servicing existing accounts. Petitioner's duties necessitate travel to Leggett & Platt's manufacturing facilities in Asia, and during 2004 he traveled to Asia 10 or 11 times for factory visits. Petitioner also traveled to the head office in Missouri six or seven times during 2004. Leggett & Platt reimbursed petitioner for all of his international and domestic traveling expenses.

However, because Leggett & Platt did not provide an office, from 1998 to 2003 petitioner used a small room on the second floor of his two-story 3,000-square-foot house as his principal place of business. Leggett & Platt did not reimburse petitioner for expenses related to his home office. The room was adjacent to some of the bedrooms. Because of the time zone differences, when calling or receiving calls from Asia, petitioner would frequently receive and make telephone calls in the evenings and late at night, disturbing his family. To eliminate the disruption, petitioner remodeled his basement, which was

previously bare and unfinished.  He started remodeling in 2003 and completed the project in 2004.  Petitioner installed carpeting, furniture, partitioning, lighting, heating, and wiring in the basement, creating about 1,000 square feet of usable space with a reception area at the bottom of the staircase.  He divided about one-half of the space into an open conference area, which he used exclusively for occasional meetings with prospects for his consulting activities, as described further below.  The other half of the basement he made into a self-enclosed main office, where he kept and used his telephone, computer, printer, and fax machine and where he maintained records for the administrative and management duties Leggett & Platt required.  Petitioner used the office exclusively for his work with Leggett & Platt and for his consulting activities.

Petitioner prepared the couple's joint Federal income tax returns for 2003 and 2004.  Separate from his employment with Leggett & Platt, petitioner reported Schedule C losses of $21,076 for 2003 and $28,347 for 2004 in connection with his attempts beginning in 2003 to start a consulting business.  Petitioner's goal was to try to match American businesses interested in exporting to Asia with Asian businesses interested in investing in American businesses.  Petitioner had hoped to earn income through commissions and finder's fees.  Petitioner thought he could develop business leads and contacts through the business

associations to which he already belonged, including the Asian Business Chamber of Massachusetts, the Greater China Business Council of New England, and the American Chamber of Commerce in China.  The meetings were social as well as networking opportunities.  Petitioner never generated any income from his efforts to launch a consulting business, and he abandoned the efforts at the end of 2004.  The details of petitioner's Schedule C for 2004 are as follows:

| | |
|---|---|
| Gross receipts or sales | -0- |
| Expenses:[1] | |
| Car and truck expenses | $7,496 |
| Office expense | 977 |
| Repairs and maintenance | 4,196 |
| Supplies | 780 |
| Travel (away from home) | 7,438 |
| Meals & ent. (½ of total) | 1,075 |
| Utilities | 1,782 |
| Other expenses: | |
| Computer | 1,910 |
| Printer | 495 |
| Fax | 296 |
| Telephone | 687 |
| Furniture | 1,215 |
| Total other expenses | 4,603 |
| Total expenses | 28,347 |
| Net loss for the year | 28,347 |

[1]For 2003 petitioner reported his home office expenses on Form 8829, Expenses for Business Use of Your Home, which flowed into Schedule C as a separate line item.  In contrast, for 2004 petitioner reported his home office expenditures as part of repairs and maintenance, utilities, telephone, and furniture expenses.

Respondent issued a notice of deficiency dated June 8, 2007, stating that the 2004 Schedule C expenses "should have been reported on Schedule A line 20" as unreimbursed employee business expenses subject to a reduction of 2 percent of adjusted gross income as required by section 67(a). The notice of deficiency, however, did not reclassify the expenses to Schedule A, Itemized Deductions; instead, the notice outright disallowed all of petitioner's Schedule C business expenses. The disallowance in turn caused a series of computational adjustments to self-employment income, itemized deduction limitations, and alternative minimum tax, resulting in a Federal income tax deficiency for 2004 of $13,216. Respondent issued a letter dated August 10, 2007, acknowledging calculation errors in the notice of deficiency and reducing the income tax deficiency for 2004 to $9,914.

Petitioners timely filed a petition seeking a redetermination of the deficiency on the ground that respondent miscalculated income and deductions for 2004. At trial respondent raised the issue that irrespective of the potential reclassification of business expenses from Schedule C to Schedule A, petitioner lacked substantiation to support any deduction.

## Discussion

I. <u>Burden of Proof</u>

In general, the Court presumes that the Commissioner's determination set forth in a notice of deficiency is correct, and the taxpayer bears the burden of showing that the determination is in error. Rule 142(a)(1); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). Under section 7491(a) the burden may shift to the Commissioner regarding factual matters if the taxpayer produces credible evidence and meets the other requirements of the section.

Additionally, the Commissioner bears the burden of proof with respect to any new matter that departs from the determinations in the notice of deficiency. Rule 142(a)(1); <u>Papineau v. Commissioner</u>, 28 T.C. 54, 57 (1957). An assertion is treated as a new matter when it either increases the original deficiency or, pertinent here, requires the presentation of different evidence. Rule 142(a)(1); <u>Shea v. Commissioner</u>, 112 T.C. 183, 191 (1999); <u>Wayne Bolt & Nut Co. v. Commissioner</u>, 93 T.C. 500, 507 (1989).

The flush language in the notice of deficiency suggests that petitioner satisfied the substantiation requirements regarding the expenses and that he merely needed to support their reclassification. Respondent now contends that the notice of deficiency was "legally sufficient" because the notice completely

disallowed rather than reclassified the expenses.  Respondent also insists that asserting lack of substantiation at trial was not a new matter but was instead an "alternate theory" or an "additional ground for disallowance within the ground that is stated in the notice of deficiency."

We are skeptical of respondent's contentions.  However, we need not and explicitly do not decide this issue because of the following legal principle:

> "In a situation in which both parties have satisfied their burden of production by offering some evidence, then the party supported by the weight of the evidence will prevail regardless of which party bore the burden of persuasion, proof or preponderance.  * * * Therefore, a shift in the burden of preponderance has real significance only in the rare event of an evidentiary tie."  * * * [Knudsen v. Commissioner, 131 T.C. ___, ___ (2008) (slip op. at 7) (quoting Blodgett v. Commissioner, 394 F.3d 1030, 1039 (8th Cir. 2005), affg. T.C. Memo. 2003-212), supplementing T.C. Memo. 2007-340.]

The present case has no evidentiary ties.  Therefore, because we resolve the case on the preponderance of the evidence and not on an allocation of the burden of proof, the issue of burden of proof is moot.  See id.; Cyman v. Commissioner, T.C. Memo. 2009-144.

II.  Petitioner's Schedule C Expenses

A.  Deductions in General

Deductions are a matter of legislative grace, and taxpayers must satisfy the statutory requirements for claiming the deductions.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84

(1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Section 6001 requires taxpayers to maintain records sufficient to establish the amount of each deduction. See also Ronnen v. Commissioner, 90 T.C. 74, 102 (1988); sec. 1.6001-1(a), (e), Income Tax Regs. If a taxpayer can establish that he once had adequate records but lost the records due to circumstances beyond his control, such as a fire, flood, or other casualty, then the Court will permit the taxpayer to reasonably reconstruct his expenses. Gizzi v. Commissioner, 65 T.C. 342, 345 (1975).

Taxpayers may deduct ordinary and necessary expenses that they pay in connection with operating a trade or business. Sec. 162(a); Boyd v. Commissioner, 122 T.C. 305, 313 (2004). Generally, the performance of services as an employee constitutes a trade or business. Primuth v. Commissioner, 54 T.C. 374, 377 (1970). To be "ordinary" the expense must be of a common or frequent occurrence in the type of business involved. Deputy v. du Pont, 308 U.S. 488, 495 (1940). To be "necessary" an expense must be appropriate and helpful to the taxpayer's business. Welch v. Helvering, supra at 113. Additionally, the expenditure must be "directly connected with or pertaining to the taxpayer's trade or business". Sec. 1.162-1(a), Income Tax Regs.

For such expenses to be deductible the taxpayer must not have the right to obtain reimbursement from his employer. See Orvis v. Commissioner, 788 F.2d 1406, 1408 (9th Cir. 1986), affg.

T.C. Memo. 1984-533.  Section 262(a) disallows deductions for personal, living, or family expenses.

If a taxpayer establishes that an expense is deductible, but is unable to substantiate the precise amount, we may estimate the amount, bearing heavily against the taxpayer whose inexactitude is of his own making.  Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).  The taxpayer must present sufficient evidence for the Court to form an estimate, because without such a basis, any allowance would amount to unguided largesse. Williams v. United States, 245 F.2d 559, 560-561 (5th Cir. 1957); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Section 274 overrides the Cohan rule with regard to certain expenses.  Sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).  Section 274 requires more stringent substantiation for travel, meals, and listed property, defined under section 280F(d)(4) to include passenger automobiles, computers or peripheral equipment, and cellular telephones. Section 274(d) requires taxpayers to provide adequate records or sufficient other evidence establishing the amount, time, place, and business purpose of the expense to corroborate the taxpayer's statements. Thus, even if such an expense would otherwise be deductible under Cohan, section 274 may still prohibit a deduction if the taxpayer does not have sufficient

substantiation.  Sec. 1.274-5T(a), Temporary Income Tax Regs.,
supra.

B.  Business Expenses v. Startup Expenses

While section 162 generally allows a deduction for ordinary
and necessary expenses paid in connection with carrying on a
trade or business, the trade or business must be functioning as a
business at the time the taxpayer incurred the expenses.  Hardy
v. Commissioner, 93 T.C. 684, 687 (1989), affd. in part and
remanded in part per order (10th Cir., Oct. 29, 1990); Woody v.
Commissioner, T.C. Memo. 2009-93; Glotov v. Commissioner, T.C.
Memo. 2007-147; sec. 1.162-1(a), Income Tax Regs.  For this
purpose, "A taxpayer is not carrying on a trade or business under
section 162(a) until the business is functioning as a going
concern and performing the activities for which it was
organized."  Glotov v. Commissioner, supra.  Until that time,
expenses related to the activity are not ordinary and necessary
expenses deductible under section 162 or section 212 (expenses
incurred for the production of income), but instead are
"start-up" or "pre-opening" expenses.  Hardy v. Commissioner,
supra at 687-688.

Section 195 governs the deductibility of startup expenses,
providing in pertinent part that the taxpayer must capitalize the
expenditures and "Except as otherwise provided in this section,
no deduction shall be allowed for start-up expenditures."  Sec.

195(a).  The taxpayer may elect to amortize the capitalized startup costs evenly over a period of not less than 60 months, "beginning with the month in which the active trade or business begins".[1]  Sec. 195(b).  When a taxpayer's endeavor never rises to the status of an active trade or business, the taxpayer may not amortize the startup costs.  See Bernard v. Commissioner, T.C. Memo. 1998-20.

Therefore, the threshold issue here is whether petitioner completed the startup phase and became actively engaged in a trade or business during 2004.  Courts have adopted a facts and circumstances test focusing on whether the taxpayer has satisfied all of the following three factors:  (1) Whether the taxpayer undertook the activity intending to earn a profit; (2) whether the taxpayer was regularly and actively involved in the activity; and (3) whether the taxpayer's activity has actually commenced. See Woody v. Commissioner, supra; McManus v. Commissioner, T.C. Memo. 1987-457, affd. without published opinion 865 F.2d 255 (4th Cir. 1988).

---

[1]For startup expenses that were incurred after Oct. 22, 2004, sec. 195(b) allows the taxpayer to elect to deduct a limited amount of the capitalized startup costs for the year of which the active trade or business begins, and to deduct the remainder over 180 months of amortization beginning with the month in which the active trade or business begins.  See sec. 1.195-1T(b), (d), Temporary Income Tax Regs., 73 Fed. Reg. 38913 (July 8, 2008).

We find that petitioner intended to earn a profit; however, petitioner did not establish that he was regularly and actively engaged in his consulting efforts or that the business actually began in 2003 or 2004.  Petitioner failed to attract a single client or generate a single dollar or yuan in income in 2003 or 2004.  Petitioner acknowledged that his business model "needed to be more thought out and well planned out than what I started to do", adding "Well, it just looked so easy when everybody else was doing it".  Petitioner further acknowledged that he was going to try to launch the activity again at a later date.

Thus, petitioner's own candid testimony together with the record as a whole establishes that petitioner was not carrying on an active trade or business in 2003 or 2004.  Therefore, we sustain respondent's characterization that the business expenses petitioner reported for 2004 are not Schedule C trade or business expenses.

III.  <u>Petitioner's Schedule A Unreimbursed Employee Business Expenses</u>

The holding above, however, does not end the case.  As noted in respondent's notice of deficiency, some of the 2004 expenses that petitioner claimed on Schedule C may qualify as Schedule A unreimbursed employee business expenses related to his job at Leggett & Platt.  Consequently, we will now examine the business expenses petitioner reported on Schedule C for possible

reclassification to Schedule A as 2004 unreimbursed employee business expenses.

A. <u>Car and Truck Expenses</u>

Petitioner deducted $7,496 in car and truck expenses for 2004 for a 2000 Lexus he placed in service on January 1, 2003, the date he started his consulting efforts. Petitioner reported that in 2004 he drove the Lexus 7,590 miles for business. Despite the mileage information, petitioner used actual costs to determine his car expense deduction, inputting the information regarding his automobile expenses into his computer and relying on his tax preparation software to determine the maximum deductions for depreciation and other car expenses.

Because of the nondeductibility of petitioner's startup expenses relating to his consulting efforts, the only deductible use of an automobile would be in connection with his employment with Leggett & Platt. Petitioner has not established that he used his car in connection with his employment with Leggett & Platt. Even if the car expenses were employment related, petitioner has also not shown that the expenses were not reimbursable by Leggett & Platt. Therefore, petitioner is not entitled to deduct any of the car and truck expenses as unreimbursed employee business expenses for 2004.

B.  Travel and Meals and Entertainment Expenses

Petitioner reported $7,438 of business travel expenses away from home and $1,075 of business meals and entertainment expenses on his 2004 Schedule C.  Petitioner testified that he paid these expenses in connection with his consulting efforts during three trips he made to Asia during 2004.  We have already found that the expenses petitioner paid in conjunction with his consulting efforts are nondeductible startup expenses.  Further, some of the traveling expenses may have been for personal family expenses.  Petitioner's mother lives in northern China, and his wife's mother recently moved back to China.  They also have other relatives in Beijing and other cities.  Moreover, Leggett & Platt reimbursed petitioner for all of his 2004 foreign travel business expenses, including meals and lodging.

In summary, none of petitioner's 2004 traveling expenses are deductible as unreimbursed employee business expenses.  Instead, petitioner's 2004 travel and meals and entertainment expenses were either nondeductible startup or personal expenses.

C.  Office Expenses and Supplies

Petitioner deducted $977 in office expenses and $780 in supplies on his 2004 Schedule C.  Petitioner testified that about 70 to 80 percent of these expenditures were for his employment with Leggett & Platt, and the remainder were for his consulting efforts.  Because Leggett & Platt did not reimburse petitioner

for expenses associated with working from home, and because we find that these expenditures were ordinary and necessary business expenses, we apply Cohan, concluding that petitioner may deduct 70 percent of the expenditures as unreimbursed employee business expenses for 2004, as follows:  $684 for office expense and $546 for supplies.  The remaining 30 percent of the expenses are nondeductible startup expenses.

D.  Home Office Expenses

Generally, a taxpayer may not deduct expenses paid in connection with the business use of a home.  Sec. 280A(a).  However, a taxpayer may deduct expenses allocable to a portion of his home if, in pertinent part, he uses the space exclusively on a regular basis as his principal place of business, or as a place of business where he meets patients, clients, or customers in the normal course of his business.  Sec. 280A(c)(1)(A) and (B).  The definition of "principal place of business" for this purpose includes a portion of the home that the taxpayer uses for the administrative or management activities of his trade or business if there is no other fixed location for those activities.  Sec. 280A(c)(1).

The exclusive use requirement of section 280A(c)(1) "is an all-or-nothing standard".  Hamacher v. Commissioner, 94 T.C. 348, 357 (1990).  Thus, for example, if a taxpayer uses his den as the principal place for conducting his attorney business but also

uses the den for personal purposes, then the taxpayer may not deduct any expenses related to the den.  S. Rept. 94-938, at 148 (1976), 1976-3 C.B. (Vol. 3) 49, 186.  Congress' intent in enacting section 280A was to exclude taxpayers from converting otherwise "'nondeductible personal, living, and family expenses'" into "'deductible business expenses'" merely because they had some connection with a business activity.  Hamacher v. Commissioner, supra at 357 (quoting S. Rept. 94-938, supra at 147, 1976-3 C.B. (Vol. 3) at 185.

Where a taxpayer uses his home office for more than one business, the taxpayer satisfies the exclusive use test only if each business is one of the types described in section 280A(c)(1).  Hamacher v. Commissioner, supra at 357-358. Although we found that petitioner's consulting activities were a nondeductible startup activity, we are nonetheless satisfied that petitioner's consulting activity is of the type described by section 280A(c)(1); he met potential clients there, it was the principal place of his activity, and the consulting was not a personal, family, or living usage.  Similarly, as discussed below, petitioner's use of the basement for his work as an employee of Leggett & Platt is also a type of business described by section 280A(c)(1).  Accordingly, petitioner satisfies the "all-or-nothing" exclusive use test.

A taxpayer, such as petitioner, who is an employee must also satisfy an additional requirement that his exclusive use is "for the convenience of his employer." Sec. 280A(c). Neither the Code nor the regulations define that phrase. Caselaw, however, holds that an employee satisfies the requirement when the employee maintains the home office as a condition of his employment or as necessary for the functioning of the employer's business or as necessary for the employee to properly perform his duties. Hamacher v. Commissioner, supra at 358. In contrast, the home office must not "be 'purely a matter of personal convenience, comfort, or economy' with respect to the employee." Id. (quoting Sharon v. Commissioner, 66 T.C. 515, 523 (1976), affd. 591 F.2d 1273 (9th Cir. 1978).

Petitioner's activities were essential to Leggett & Platt. He was responsible for overseeing the corporation's Asian operations, planning, and budgeting work. These responsibilities required that he conduct telephone calls late at night with Leggett & Platt facilities in Asia and that he maintain necessary records for his managerial and administrative duties. Though petitioner may have enjoyed the convenience and comfort of working from home, Leggett & Platt did not furnish him with an office. Cf. Tokh v. Commissioner, T.C. Memo. 2001-45. Petitioner had nowhere else to regularly and properly perform these responsibilities.

Therefore, we conclude that petitioner's home office was for the convenience of the employer and overall that petitioner has satisfied the requirements of section 280A with respect to business use of the home for 2004. We must, however, continue our inquiry to separate the expenses between the deductible expenses he paid with respect to his employment with Leggett & Platt and the nondeductible expenses he paid related to his startup consulting activities.

### 1. Furniture, Repairs and Maintenance, and Utilities

Petitioner reported on his 2004 Schedule C that he spent $1,215 for furniture, $4,196 for repairs and maintenance, and $1,782 for utilities in 2004 related to his business use of his basement. Petitioner testified that he paid these expenditures for finishing the remodeling and maintaining his basement in 2004.

As noted earlier, petitioner divided about one-half of the basement space into a conference area for his consulting activities. The record gives no indication that petitioner used the conference area for his employment with Leggett & Platt. Accordingly, one-half of the basement expenditures are nondeductible startup costs. With respect to the other half of the expenditures, petitioner testified further that he split his time in the basement office evenly between Leggett & Platt and his consulting activities. Because we have already found that

petitioner's home office was for the convenience of his employer, petitioner is eligible to deduct the portion of his office expenditures pertaining to Leggett & Platt.

Consequently, separating the conference room and excluding one-half of the office expenditures, we apply Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), to conclude that for 2004, petitioner may deduct $304 ($1,215 x ½ x ½) of his furniture purchases,[2] $1,049 ($4,196 x ½ x ½) of his basement repairs and maintenance expense, and $446 ($1,782 x ½ x ½) of his basement utility expenses as unreimbursed employee business expenses for the business use of his home.  The remainder of these expenses for 2004 are nondeductible startup expenses.

### 2.  Computer, Printer, Fax, and Telephone

On his 2004 Schedule C petitioner deducted $1,910 for a new computer he purchased in 2004, $495 in printer expenses, $296 for fax expenses, and $687 for telephone expenses.  Petitioner testified that he used his computer and printer "primarily for my consulting business" and that his fax and telephone expenses were split "roughly half and half" between his consulting activities and his employment with Leggett & Platt.

Section 280F(d)(4)(A)(iv) includes computers and peripherals as listed property.  However, section 280F(d)(4)(B) provides an

---

[2]Deductible in the first year, 2004, under sec. 179, Election To Expense Certain Depreciable Business Assets.

exception for computer or peripheral equipment used at a regular place of business, including a portion of the home qualifying under section 280A(c)(1) (requiring in pertinent part that the portion of the dwelling unit must be the principal place of business for the trade or business).  Verma v. Commissioner, T.C. Memo. 2001-132.  Petitioner qualifies for the exception of section 280F(d)(4)(B) because, as noted above, his home served as his principal place of business for his employment with Leggett & Platt.

With respect to the telephone expense, a taxpayer may not deduct the cost of basic local telephone service for the first telephone line provided to a residence, because the expenditure is a personal expense.  Sec. 262(b).  The record is silent as to the number of lines to petitioner's home.  Respondent made no assertion that petitioner's telephone expenses related to a first telephone line.  Given petitioner's work circumstance of residing in Massachusetts with responsibility for Asian operations and his need to communicate regularly with corporate headquarters in Missouri, we conclude that a significant portion of the telephone use would have been for long distance calls.  Moreover, because of the number of people residing in his home, the location of the telephone in an office in the basement beneath a 3,000-square-foot home, and the volume of calls that petitioner made during the evenings and nights, we find it highly probable that the

telephone expenses petitioner claimed for 2004 were for a second telephone line that he maintained exclusively for business.

Returning to the analysis of all of the equipment expenses, we apply Cohan, finding that "primarily for my consulting business" means 75 percent of the use, and that "roughly half and half" means 50 percent of the use.  Thus, petitioner may deduct as 2004 unreimbursed employee business expenses the following items:  Computer expenses of $478 ($1,910 x 25 percent),[3] printer expenses of $124 ($495 x 25 percent), fax expenses of $148 ($296 x 50 percent), and telephone expenses of $344 ($687 x 50 percent).  The remainder of petitioner's 2004 equipment expenses are nondeductible startup expenses.

To reflect the foregoing,

Decision will be entered

under Rule 155.

---

[3]Also deductible in the first year, 2004, under sec. 179.